IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BENJAMIN HINDS,

      Plaintiff,

vs.                                Case No. 20-cv-01011 MV/JFR

CAROLYN BARELA, NINA SISTER,
LT. SIFUENTES, SGT. SILVA,
SGT. TORRES, SGT. ARAGON,
SGT. OCONNER, OFF. GARZA,
C.O. NORRIS, C.O. O'CONNER,
C.O. BACA, C.O. BACA, C.O. RUPER,
C.O. VELASCO, C.O. RODRIGUEZ,
C.O. FARVA, C.O. SANCHEZ,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION REGARDING PLAINTIFF'S CIVIL RIGHTS COMPLAINT[1]

THE MATTER before the Court is Plaintiff's *Amended Verified Civil Rights Complaint.*
Doc. 12. Plaintiff is incarcerated in the Department of Corrections, State of New Mexico, and is
proceeding *in forma pauperis*. Plaintiff raises state law claims of negligence and negligent
supervision and a Section 1983 claim alleging cruel and unusual punishment based on conditions
of confinement. The Court ordered a *Martinez* Report, which Defendants filed on March 4,
2022, which includes an "Evaluation of Claims and Defenses" seeking dismissal of Plaintiff's
claims. Doc. 27. Plaintiff thereafter submitted his objections on April 21, 2022 (Doc. 33), and
Defendant replied on May 10, 2022. Doc. 35. Having considered the parties' submissions,
relevant case law, and the record, the undersigned determines no hearing is necessary and

---

[1] This matter was referred to the undersigned on September 27, 2021 "to conduct hearings, if warranted, including
evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition
of the case." Doc. 22.

recommends that the District Court grant Defendants' motion and DISMISS Plaintiff's Amended Complaint.

FACTUAL BACKGROUND[2]

In April, 2019, Plaintiff was detained in the Otero County Detention Center, awaiting sentencing on criminal charges that were pending in state court. The state judge authorized a one-day furlough so that Plaintiff could visit his gravely ill grandmother. MMS at 29-30. Prior to leaving the jail and commencing his furlough, Plaintiff submitted to a urinalysis (UA) so that the jail could have a "baseline" reading, MMS at 68, given that the state judge had ordered that Plaintiff may not ingest illegal drugs during the furlough. MMS at 29. Plaintiff returned to the facility as ordered by 6 pm on April 16, 2019, but refused to submit to another UA. MMS at 180. As per detention center policies, Plaintiff was detained in Holding Cell C, which is a "dry cell" that lacks plumbing facilities, meaning that Plaintiff would have no direct access to water or a toilet. *See* Doc. 28-1, Ex. A, "Affidavit of Carolyn Barela, ¶¶ 15-16 (hereafter "Barela Aff.") ("all Detention Center inmates returning from a furlough are placed in a dry cell for a minimum of 24 hours.… [t]he time in the dry cell may be extended.…"); *see also* Policy 503, MMS at 516 (if "it has been determined that an inmate may be concealing contraband," staff are to "place the individual in a dry cell (with no toilet facility)" and maintain observation of the inmate). In order to receive water or use a toilet, Plaintiff was required to request assistance from jail employees.

According to the furlough order signed by the state judge, Plaintiff "shall not ingest any controlled substance nor shall he consume any alcohol, and shall submit to warrantless searches

---

[2] For its references to the factual record, the Court will rely on Plaintiff's *Amended Verified Civil Rights Complaint*, Doc. 12, as well as the redacted attachments to the *Martinez* Report. *See* Docs. 28-1, 28-2, 28-3 (collectively Exhibits A, A-1 through A-9, B). The Court will utilize the Bates numbering used when citing to those attachments, i.e "MMS at ___".

of his person, premises or automobile at the request of any law enforcement officer." MMS at 29. As noted, when Plaintiff returned from the furlough, he initially refused a urinalysis, but on April 17, 2019, the day after he returned from his furlough, Plaintiff submitted to a urinalysis which, when compared to the urinalysis taken before he departed the jail, revealed recent use of controlled substances. MMS at 65-66. While detained in the dry cell, on April 17, 2019, Plaintiff was escorted to the restroom to defecate, after which correctional officers retrieved packages of contraband located in his stool. MMS at 317. Later that day, additional packages were found on Plaintiff's person in the dry cell. MMS at 52-53; 321. Among the contraband seized from Plaintiff on April 17, 2019, were marijuana, methamphetamine, tobacco, and suboxone. MMS at 53.

On April 18, 2019, a mental health nurse visited Plaintiff and subsequent to her interview placed Plaintiff on a mental health watch. MMS at 115. Plaintiff remained on mental health watch until April 24, 2019, at which time he was released back to general population in the detention facility. MMS at 114.[3] Throughout the nine days that Plaintiff remained in the holding cell, Plaintiff relied on jail staff for water and access to the restroom, and the detention facility maintained detailed records of the times staff checked on him, when they escorted him to the restroom or provided water, and when they provided meals and opportunities for recreation. *See generally* MMS at 180-203.

In his *Amended Verified Civil Rights Complaint*, Plaintiff details an incident that he alleges occurred on April 17, 2019, the day after he returned from his furlough. Plaintiff states that he woke up sometime after 8:00 pm needing to use the restroom, and repeatedly requested

---

[3] It appears that Plaintiff returned to general population on April 24, 2019, after being cleared by a mental health nurse the day before. *Compare* MMS at 114 ("Ben Hinds released from MHW to general population", signed by mental health nurse Donna R. Mohr on April 24, 2019), *with* MMS at 325 (detention narrative indicates that nurse Mohr released Plaintiff from mental health watch on April 23, 2019).

detention facility staff for an escort.  Doc. 12 at 11.  Plaintiff alleges that staff delayed

responding or otherwise ignored him, so he was forced to defecate on a piece of paper in the

holding cell.  Apparently, Plaintiff did not notify anyone but slid the paper under his door into

the hallway.  *Id.*  Plaintiff states that "after about 15-20 minutes", Defendant Officer Garza

discovered the paper and immediately cleaned up the mess.  *Id.*  Plaintiff states that he then

explained what had transpired (i.e. having asked for assistance from jail staff and not having

access to water or a restroom) to Defendant Sgt. O'Conner.  *Id.* at 11-12.  Finally, Plaintiff

further complains that the next morning he was forced to eat breakfast without having been

allowed to clean his hands.  *Id.* at 12.[4]

PROCEDURAL HISTORY

Plaintiff filed a pro se *Prisoner's Civil Rights Complaint* (Doc. 1) against the Otero

County Detention Center and its administrator.  Plaintiff later filed an *Amended Verified Civil*

*Rights Complaint* which omitted the County Detention Center and added sixteen County

employees.  Doc. 12.  After the District Judge resolved a number of motions, *see* Doc. 21, she

referred the matter to the undersigned "to recommend to the Court an ultimate disposition of the

case."  Doc. 22 at 1.  The undersigned ordered the Defendants to submit a *Martinez* Report,

which they did on March 4, 2022 and March 7, 2022.[5]  Plaintiff filed objections to the *Martinez*

report, Doc. 33, and also filed a motion for summary judgment on March 21, 2022, which the

Defendants opposed on March 22, 2022.  Docs. 30, 31.

Plaintiff alleges the following:

---

[4] The Court reviewed the attachment to the *Martinez* Report and did not locate independent reports or other
paperwork that documents this particular incident.  Nonetheless, the Defendants address the matter in their response,
so the Court will accept the veracity of the story.

[5] Defendants submitted an "Errata" on March 7 because the original *Martinez* report contained inmate records, some
of which contained personal identifying information, that had not been redacted.

Count I: Negligence, negligent supervision, deliberate indifference by Defendants Barela, Sisler, Sifuentes, Silva, Torres, Aragon, D. O'Connor, Garza, Norris, T. O'Connor, Baca, Baca, Ruppert, Velasco, Rodriguez, Falvey, and Sanchez;[6]

Count II: Cruel and unusual punishment of rights secured in the Fourteenth Amendment Due Process Clause by way of the Eighth Amendment;

Count III: Deprivation of civil rights under 42 U.S.C. § 1983 by Defendants Barela, Sisler, Sifuentes, Silva, Torres, Aragon, D. O'Connor, Garza, Norris, T. O'Connor, Baca, Baca, Ruppert, Velasco, Rodriguez, Falvey, and Sanchez under the Eighth and Fourteenth Amendments [sic].

Doc. 12 at 18-20. The *Amended Verified Civil Rights Complaint* is fully briefed and ready for ruling.

LEGAL STANDARDS

    a. *Martinez* Report

Under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), courts may order prison and police officials to investigate the incidents underlying a plaintiff's lawsuit and then compile and file a report. The purpose of the *Martinez* Report is to ascertain whether there are any factual or legal bases for the plaintiff's claims. *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). In order for the Court to use the *Martinez* report in deciding motions for summary judgment, the Court must provide notice to the parties and give them the opportunity to object. *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003) ("If the defendant files a motion to dismiss requiring consideration of additional factual material, the court should convert the motion to one for summary judgment and ensure that the prisoner is given proper notification of the conversion.").

    b. Rules 56 and the Law of Summary Judgment

---

[6] The names listed by Plaintiff in his Amended Complaint differ slightly from this list, which is taken from Defendants' *Martinez* Report. *See* Doc. 27, at 1 n. 1.

5

Rule 56 authorizes judgment without trial "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Substantive law governs the elements of a given claim or defense and reveals what issues are to be determined and what facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, "[a]n issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson,* 477 U.S. at 248). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* (citing *Anderson,* 477 U.S. at 248).

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca–Cola Bottling Co*., 968 F.2d 1022, 1024 (10th Cir. 1992). Instead of disproving a claim or defense, the movant need only show "a lack of evidence" on an essential element. *Adler*, 144 F.3d at 671. If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor. *Id.*; *see also Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) ("A motion for summary judgment that is supported by affidavits or other materials provided under oath gives the adverse party notice that summary judgment is possible; the adverse party must respond with affidavits or other evidence to show a genuine issue of material fact."). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

c. <u>Qualified Immunity</u>

Because Defendants raise the affirmative defense of qualified immunity, Plaintiff assumes the burden of showing (i) that the Defendants' actions violated Plaintiff's constitutional or statutory right(s); and (ii) that the right was clearly established at the time of the alleged misconduct. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009); *accord Albright v. Rodriguez,* 51 F.3d 1531, 1534-35 (10th Cir. 1995). The court may decide which of the two prongs of the qualified immunity analysis should be addressed first, "in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To determine whether a right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee would understand that what he or she did violated a right. *See Casey v. W. Las Vegas Indep. Sch. Dist.,* 473 F.3d 1323, 1327 (10th Cir. 2007). "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colo. Dep't of Corr.,* 429 F. App'x 707, 710 (10th Cir. 2011) (*quoting Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983)). "Ordinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (alteration in original) (quoting

7

*Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

If a plaintiff satisfies this two-part test, the burden shifts to the defendant to show there are no genuine issues of material fact precluding summary judgment. *Albright,* 51 F.3d at 1535. The traditional summary judgment standard then applies.

    d.  <u>Pro se Litigants</u>

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Hall*, 935 F.2d at 1110.  A court is to "make some allowances for 'the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110).  However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).  The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  The court does not assume the responsibility of "searching the record" in favor of the plaintiff. *Garrett*, 425 F.3d at 840.  Nor does the plaintiff's pro se status excuse him from the burden of coming forward with evidence to support his claims as required by the Federal Rules of Civil Procedure and the local rules of this Court. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *see also* D.N.M.LR-Civ. 56(b).

e. Law on the Eighth Amendment

When a prisoner is incarcerated after being indicted, the Eighth Amendment protects him from "a prison official's 'deliberate indifference' to a substantial risk of serious harm," as well as from the intentional use of excessive force. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 28 (1993)). "[N]either prison officials nor municipalities can absolutely guarantee the safety of their prisoners," but "[t]hey are . . . . responsible for taking reasonable measures to insure the safety of inmates." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999). An official violates the Eighth Amendment when two elements are met: (i) the official causes an injury that, objectively, is "sufficiently serious," i.e., an injury that equates to the "denial of the minimal civilized measure of life's necessities"; and (ii) the official has a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). The second condition represents the functional application of the deliberate indifference standard. *See Smith v. Cummings,* 445 F.3d 1254, 1258 (10th Cir. 2006) ("To establish a cognizable Eighth Amendment claim for failure to protect [an inmate from harm], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." (internal quotation marks and citation omitted).

f. Law on New Mexico Tort Claims Act

A plaintiff may not sue a New Mexico governmental entity or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions that the NMTCA grants for governmental entities and public employees. *See Begay v. State*, 1985-NMCA-117, ¶ 10, 104 N.M. 483, 723 P.2d 252, 256 ("Consent to be sued may not be implied, but must come within

one of the exceptions to immunity under the Tort Claims Act."), *rev'd on other grounds by*

*Smialek v. Begay*, 1986-NMSC-049, 104 N.M. 375, 721 P.2d 1306. "A plaintiff also may not

sue a governmental entity or its employees for a damage claim arising out of violations of rights

under the New Mexico Constitution unless the NMTCA contains a waiver of immunity." *Lymon*

*v. Aramark Corp.,* 728 F. Supp. 2d 1222, 1251 (D.N.M. 2010), *aff'd*, 499 F. App'x 771 (10th Cir.

2012).

ANALYSIS

　　　Plaintiff's Amended Complaint ends with a "Verification" wherein Plaintiff states,

"under penalty of perjury" that the information in the Complaint "is true and correct." Doc. 12 at

24. As such, the Amended Complaint is a "verified" pleading that is treated as an affidavit for

summary judgment purposes. *See, e.g., Hall,* 935 F.2d at 1111 (and cases cited therein).

Similarly, because the *Martinez* Report contains materials outside of the pleadings, it too is

treated as an affidavit for summary judgment purposes. *See id.* In this case, the Court ordered

the *Martinez* Report and provided notice to the parties that it "may use the *Martinez* Report in

deciding whether to grant summary judgment for or against any party, whether by motion or *sua*

*sponte*." Doc. 25. Plaintiff timely filed his objections and response to the *Martinez* Report. *See*

Doc. 33. Accordingly, the Court will analyze Plaintiff's claims under the summary judgment

standard.

　　　Defendants argue that qualified immunity shields Defendants against any individual-

capacity claims based on deliberate indifference to unconstitutional conditions of confinement,

that no *Monell*[7] municipal liability claim exists to raise any official-capacity liability against

---

[7] *Monell v. Dep't of Soc. Servs.,*436 U.S. 658, 691 (1978).

Defendants, and that all state-law claims should be dismissed as immunity has not been waived under the NMTCA and Plaintiff did not timely file a tort claims notice.  Doc. 27.

    a. <u>Whether Defendants Are Entitled To Qualified Immunity</u>

Defendants argue that Plaintiff's section 1983 claim should be dismissed, as Defendants enjoy qualified immunity.  Since Plaintiff does not state whether he brings claims against Defendants in their official or individual capacity, like Defendants in the *Martinez* Report, the Court addresses both possibilities.

    *1. Supervisory Liability*

Here, Plaintiff alleges that "Defendant Carolyn Barela is responsible for ensuring Lieutenants, unit managers and correctional officers all do their jobs correctly and in accordance with policies and rules, that they themselves created…".  Doc. 12 at 20, ⁋ 51.  Plaintiff also claims that "Defendants Barela et al.'s policies and inadequate training and supervision, as well as the turning a blind eye to the deliberate indifference, cruel and unusual punishment, negligent supervision, negligence and due process requirements violated the rights of the [Plaintiff] . . . ."  Doc. 12 at 21, ⁋ 54.  Plaintiff specifically names Defendants Barela, Sisler, and Sifuentes as those Defendants with supervisory responsibility.  Doc. 12 at 15, ⁋ 29.  Construing Plaintiff's complaint liberally and with less stringent standards than those applied to represented parties, *see Hall*, 935 F.2d at 1110, the Court understands Plaintiff to be raising supervisory liability claims against Defendant Barela, Sisler and Sifuentes.

To hold a municipality liable (or a defendant liable in a supervisory capacity), a plaintiff must prove that (1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring.  *See Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760,

769−71 (10th Cir. 2013); *see also Waller v. City and Cnty of Denver*, 932 F.3d 1277, 1283-84

(10th Cir. 2019).  Deliberate indifference requires proof that a municipal actor disregarded a

known or obvious consequence of his action.  *George v. Beaver Cnty*, 2022 WL 1310982 at *4

(10th Cir. 2022) citing *Connick v. Thompson,* 563 U.S. 51, 60 (2011) (citation omitted).  In this

case, Plaintiff must show that, as of April 16, 2019, "clearly established law. . . . would. . . . have

put a reasonable official in [Defendant Barela's] position on notice that [her] supervisory

conduct would effect an Eighth Amendment violation."  *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th

Cir. 2015) (citation omitted).  In other words, Plaintiff must "identify a case where an offic[ial]

acting under similar circumstances as [Defendant Barela] was held to have violated" the

Constitution.  *White v. Pauly*, 137 S.Ct. 548, 552 (2017).

The Court's research has uncovered no case that might support Plaintiff's claim that

being made to wait for water, or being made to wait to use the restroom, as an inmate, is a

violation of the inmate's Constitutional's rights.  In *Waller*, the plaintiff identified a "handful" of

excessive-force incidents that allegedly occurred after the assault that prompted him to file his

lawsuit; the Court noted that

> even if these allegations could arguably constitute circumstantial evidence that Denver's
> training program is deficient in some way, they fail to show that Denver acted with
> deliberate indifference in September 2012 to a risk that was known or obvious to the city
> at that time.  Incidents that occurred subsequent to the incident at issue in this case cannot
> have provided Denver with notice of a deficiency in its training program before that
> incident, and thus they cannot be used as evidence that… Denver "decisionmakers ...
> deliberately chose[ ] a training program that w[ould] cause violations of constitutional
> rights."  *Connick*, 563 U.S. at 62, 131 S.Ct. 1350; *see also id.* at 64, 131 S.Ct. 1350
> (noting that deliberate indifference generally requires "proof of a *pre-existing* pattern of
> violations" (emphasis added)).

932 F.3d at 1286-87.  In addition to turning aside the plaintiff's effort to assign municipal

liability based on deliberate indifference, the *Waller* court also rejected the plaintiff's failure-to-

supervise theory of liability given that neither of the plaintiff's complaints allege any facts

12

regarding any supposed supervisory deficiencies in the sheriff's department, "much less any facts describing how [the deputy's] supervision was inadequate or how his purportedly inadequate supervision caused [plaintiff's] injury." *Id*. at 1289. Other cases similarly reject supervisory liability based on a plaintiff's failure to link an alleged violation to a failure to train. *See e.g. Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998) (plaintiffs' failure-to-train claim fails because the record contains no evidence tending to show that the County acted with deliberate indifference); *Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010) (municipal liability for failure to train forensic chemists under § 1983 rejected, as there was no evidence that City's policymakers were deliberately indifferent to the need for further training); *Sturdivant v. Blue Valley Unified School Dist., USD 229,* 469 F.Supp.3d 1121 (D. Kan. 2020) (plaintiff's claims of race discrimination and retaliation dismissed, as she did not show the necessary pattern of similar constitutional violations to establish deliberate indifference). Ultimately, these and other cases reveal that the deliberate indifference standard is "stringent." *Waller*, 932 F.3d at 1285.

Plaintiff points to no aspect of Defendants' training or supervision that could suggest future misconduct would be a foregone conclusion. Plaintiff identifies his injury as having had to "beg for water," to "beg to use the bathroom," and to "beg[] staff for the basic needs" which he describes as "ridiculous." Doc. 12 at 11-12. But Plaintiff is unable to tie his alleged harm to Defendants' failure to train, or to training that is recklessly indifferent to inmates' constitutional rights. Plaintiff "must prove that the deficiency in training actually caused his jailer to act with deliberate indifference to his safety." *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). The Court understands that being made to wait for water or a bathroom visit is inconvenient, and at times even upsetting, but Defendants' use of the dry cell as a means of preventing the

introduction of contraband into their facility and to otherwise protect residents and staff reflects sound and prudent jail policy. Again, there is nothing to suggest that Defendant Barela (or any other supervisor Defendant) created or otherwise was aware of problems in policies or training that might have caused jail staff to ignore or otherwise be indifferent to Plaintiff's requests.

The records attached to the *Martinez* Report show that Defendants provided regular meals and drinks and accommodated the Plaintiff's need to use the restroom as expeditiously as circumstances permitted. *See, e.g.*, MMS 180-203. The fact that Plaintiff defecated on a piece of paper is unfortunate, but Plaintiff never alerted anyone and even admits that the mess was cleaned up after 15-20 minutes, immediately upon its discovery by jail staff. Moreover, while Plaintiff alleges that he was made to wait "about 15-20 minutes" (for restroom, Doc. 12 p. 7), "about 10 minutes" (for water, Doc. 12 p. 8), "at minimum around an hour" (for water, Doc. 12 p. 8), "for about 30 minutes" (for water, Doc. 12 p. 10), "for about an hour" (for restroom, Doc. 12 p. 10), "around 20-30 minutes" (for restroom, Doc. 12 p. 12), and refers to various other indeterminate delays in getting water or escorts to the restroom, being made to wait for water or to use the restroom is not sufficiently serious as to rise to the level of a constitutional violation.[8] Furthermore, there is no evidence to suggest that any of the Defendants turned a blind eye to a situation that could harm Plaintiff. As noted by the Tenth Circuit,

> In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. First, the deprivation alleged must be objectively "sufficiently serious,"… depriving the inmate of "the minimal civilized measure of life's necessities." Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must exhibit "deliberate indifference" to a substantial risk of serious harm to an inmate. Thus, the deliberate indifference standard in a prison-conditions case is a "subjective" and not an "objective"

---

[8] The Court notes that Plaintiff did not have a timepiece, either in his cell or in view of his cell. Barela Affidavit, ¶ 27. In fact, many of the delays described by Plaintiff are contradicted by the jail records, as well as by the Affidavits attached to the Martinez Report. *See, e.g.,* Barela Aff., ¶¶ 28-29; Anderson Aff., ¶¶ 12-15; MMA at 180-203. For purposes of this analysis, however, the Court accepts Plaintiff's stated times as true and accurate, as Plaintiff here is the non-moving party.

requirement. That is, a prison official is liable only if the "official knows of and disregards an excessive risk to inmate health and safety." It is not enough to establish that the official should have known of the risk of harm.

*Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citations omitted).

The Court has also reviewed the record in an attempt to understand whether an official policy or custom has resulted in injury to Plaintiff's constitutional rights, or whether Defendants enacted or maintained that policy with deliberate indifference to the risk of that injury occurring. Defendants have included in the *Martinez* Report copies of the polices that bear on Plaintiff's claims. MMS 420-527. Defendants point to three policies as relevant to Plaintiff's claims— Policies 504, 503 and 406—and refer to the Affidavits that they attached to the *Martinez* Report. Doc. 27 at 8-10. In its review of these materials, the Court is unable to discern any policy that violates an inmate's constitutional rights, and certainly nothing that relates to Plaintiff's claims of systematic delays in receiving water and access to a restroom.

Policy 504 is designed to prevent the introduction of contraband into the facility, and implements a practice of placing individuals returning to the jail in a dry cell for a minimum of 24 hours; this policy reflects a sound penological interest in promoting a safe environment for inmates and staff alike. Policy 503 allows for searches of inmates if there is reasonable suspicion to believe they possess contraband, and to place the inmate in a dry cell for observation when circumstances merit; this policy similarly furthers the facility's goal of maintaining a safe environment. Policy 406 governs the segregation of inmates, including for medical or mental health purposes; when an inmate is placed in segregation, that inmate will remain there until a mental health professional clears the inmate for return to general population. And while an inmate remains in segregation, staff are directed to check on the inmate at 30-minute intervals for that inmate's safety. Finally, the Affidavit of Defendant Barela describes how the jail

accommodates inmates who are placed in a dry cell with respect to access to water and restrooms, and notes that while there may be wait times for these items, there is no known instance of an inmate waiting thirty minutes or more to receive water, or an hour or more to use the restroom. Doc. 27 at 9, citing Affidavit of Carolyn Barela, ⁋⁋ 12-18.

The Court is mindful that being held in a dry cell in the booking area of the jail is not what any detainee would prefer, and it appears that Plaintiff was inconvenienced when it came to obtaining water or being escorted to the restroom. Given the fact that he returned from his furlough having secreted contraband in his rectum, it is safe to assume that Plaintiff was experiencing some discomfort. Yet jails are busy places, especially in the booking area with numerous individuals coming and going. Plaintiff puts forth no evidence showing any of the supervisory Defendants (e.g. Barela) had actual knowledge that correctional officers may have deliberately not followed their policies and procedures or otherwise ignored Plaintiff's needs. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). To the contrary, the evidence shows that Defendants acted to protect Plaintiff's health and well-being when they placed him on a mental health/medical watch, after a nurse noted that Plaintiff indicated that he was depressed about being in segregation and not feeling well because he had brought drugs in his rectum. MMS at 325.[9]

Plaintiff has failed to set forth sufficient proof that might allow this Court to conclude that there is a genuine issue of material fact as to whether municipal liability extends to any of

---

[9] Indeed, had Defendants *not* kept Plaintiff for observation under these circumstances, they very well might have been seen as having been deliberately indifferent to Plaintiff's needs, in the event Plaintiff acted to harm himself or others. *See Crane v. Utah Dep't of Corr.,* 15 F.4th 1296, 1307 (10th Cir. 2021) ("[P]rison officials are deliberately indifferent if they fail to take reasonable steps to protect a pre-trial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk." (citation omitted)).

the Defendants in their official capacity. The Court recommends that the District Judge find that qualified immunity shields Defendants of any supervisory liability, and grant summary judgment.

### 2. Individual Capacity

Next, the Court considers whether Plaintiff sets forth evidence that might overcome qualified immunity of Defendants in their individual capacities.

Plaintiff must show that Defendants violated a constitutional or statutory right and that the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). The Court has reviewed the cases cited by Defendants in their *Martinez* Report, and has conducted its own research to determine whether Plaintiff can point to a clearly established right that Defendants violated when they caused him to wait to be given water or be brought to the restroom. The caselaw confirms that the deprivation of humane conditions of confinement must be sufficiently serious before a violation of the Eighth Amendment results. *Compare, e.g., Covalt v. Inmate Serv. Corp.*, 658 F.App'x 367 (10th Cir. 2016) (seven day journey in prison transport van, with infrequent stops, crowded conditions, handcuffs, minimum to no hygiene causing plaintiff to wet himself did not rise to constitutional violation); *Gillings v. Banvelos*, 2017 WL 3446605 (D. Colo. Aug. 11, 2017) (no Eighth Amendment violation found where inmate placed in a "cage" with no plumbing, and given a bag and bottle to use in lieu of a toilet); *Butler v. Rice*, 2021 WL 4134808 (E.D. Okla. Sept. 10, 2021) (no Eighth Amendment violation found when inmate issued only two thin, woolen blankets and no mat, causing him to sleep on the bare concrete floor for more than six months); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993)

(eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies), *with Taylor v. Riojas*, 141 S.Ct. 52, 53 (2020) (constitutional violation found when inmate was confined to a cell covered floor to ceiling with feces and then forced to sleep in raw sewage in second cell with clogged drain); *Despain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (inmate confined for 36 hours in a flooded cell with urine and feces nearby was a sufficiently serious deprivation); *McBride v. Deer*, 240 F.3d 1287 (10th Cir. 2001) (inmate held for three days in a feces-covered cell established a sufficiently serious condition to survive Rule 12(b)(6) motion to dismiss); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (objective component of Eighth Amendment claim upheld where the plaintiff "had not had food or water for more than 24 hours . . . . and both defendants restrained him with a stun belt, belly chains, handcuffs, and a black box covering the handcuffs, which prevented him from accessing the food and water provided to the other prisoners being transported"). Plaintiff cites *Young v. Quinlan*, 960 F.2d 351, 364-65 (3rd Cir. 1992), but the Court finds *Young* easily distinguishable from the instant case and places it firmly in the *Taylor/Despain/McBride* group of Eighth Amendment violations, given the truly "wretched" conditions the plaintiff in *Young* was forced to endure as described by the Third Circuit in its opinion. *See* 960 F.2d at 353-56 (describing in detail the numerous physical and sexual assaults and death threats from other inmates, the squalid conditions in which plaintiff was forced to survive including being denied access to a restroom for over a day, being denied toilet despite having diarrhea and not being allowed to wash his hands, and the abject and willful failure of prison officials to attend to the plaintiff's health and safety).

These cases demonstrate that a plaintiff must show that the condition of confinement rises to the level of one that poses a "'substantial risk of serious harm' to inmate health or

safety." *Despain*, 264 F.3d at 973 (quoting *Farmer*, 511 U.S. at 834). Furthermore, that condition must deprive the inmate of "the minimal civilized measures of life's necessities." *Barney*, 143 F.3d at 1310 (citations omitted). And for liability to attach, the jail official must have a "sufficiently culpable state of mind" that exhibits "deliberate indifference to a substantial risk of serious harm to the inmate." *Id.* (citations omitted). The jail official is only liable, then, if the official "knows of and disregards an excessive risk of inmate health and safety." *Id.* (citations omitted).

Water and access to a toilet certainly qualify as life's necessities, and individuals detained in a jail or prison must depend on their jailers for these basic needs to be met. It is important to note that Plaintiff was not *denied* these necessities, but rather forced to *wait* after requesting them. The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "'restrictive and even harsh' without violating constitutional rights." *Barney*, 143 F.3d at 1311 (quoting *Rhodes,* 452 U.S. at 347, 349). The Court understands Plaintiff to have been inconvenienced when he had to wait for water for up to thirty minutes or more, and perhaps to experience a measure of distress when not allowed to access the restroom, especially since he had secreted contraband in his rectum and had been administered a laxative. The fact that Plaintiff defecated on a piece of paper, in the dry cell, suggests that Plaintiff's discomfort and urgency were real. But there is no evidence to suggest that Defendants denied Plaintiff these necessities in a spiteful or malicious way, or in a way that disregarded a real risk to the Plaintiff's health and safety; Plaintiff doesn't claim that Defendants *deliberately* endangered his well-being. Nor does Plaintiff's Amended Complaint claim that he suffered any injury as a result of Defendants' actions. As such, Plaintiff is unable to show that he suffered a constitutional violation.

The Court recommends that the District Judge find that qualified immunity shields the Defendants from liability and grant summary judgment on Plaintiff's Eighth Amendment claims against them.

### 3. Whether The NMTCA Bars Plaintiff's State Law Claims

Defendants argue next that Plaintiff's state law claims grounded in negligence are barred because the NMTCA has not explicitly waived immunity for these claims. Plaintiff specifically claims "negligence, negligent supervision, supervisor negligence…", Doc. 12 at 1, but anchors his claims in terms of his "Fourteenth Amendment rights by way of Eighth Amendment to the Constitution of the United States of America as well as due process rights resulting in civil rights violation and cruel and unusual punishment." *Id.* at 2; *also see id.* at 5, ¶ 21 (discussing "deliberate indifference, cruel and unusual punishment, deprivation of civil rights and due process violations. . . ."); *id.* at 17, ¶ 39 (claiming Defendants "should be held responsible for recklessly and willfully deciding to be negligent in the care and supervision of the Plaintiff."). Additionally, Count 1 is entitled "Negligence, negligent supervision, deliberate indifference. . . ." Doc. 12 at 18. Thus, Plaintiff identifies his claims with reference to Constitutional rights, but reading his complaint liberally, the Court will construe it as also alleging state tort law violations.

Defendants argue in the *Martinez* Report that Plaintiff did not provide notice to Defendants of his intent to sue, within ninety (90) days of the occurrence giving rise to it, as required by state law. Doc. 27 at 20, citing N.M. Stat. Ann. § 41-4-16(A) (1953). Plaintiff does not respond to this assertion in his response. The Court notes that the *Martinez* Report contains a hand-written document that states: "I Benjamin Hinds am filing a notice of tort against the Otero County Jail. On April 15th at 1700 I was confined to 'dry cell' for over a week in clear violation

of my civil rights.  I am asking 3 million dollars in punitive damages."  MMS at 4.  The note is

undated, unsigned and not verified.  The Court finds this document insufficient to comply with

Section 41-4-16(A)'s strict notice requirement, but for purposes of the present discussion will

accept it as Plaintiff's timely-filed tort claim notice.  Even so, as discussed below, Defendants

are entitled to summary judgment on Plaintiff's state law claims, as such claims are barred by the

NMTCA.  *See* NMSA 1978, § 41-4-4 *et seq.*

A plaintiff may not sue a New Mexico governmental entity or its employees or agents

unless the plaintiff's cause of action fits within one of the exceptions that the NMTCA grants for

governmental entities and public employees.  *See Begay*, 1985-NMCA-117 ¶ 10 ("Consent to be

sued may not be implied, but must come within one of the exceptions to immunity under the Tort

Claims Act."), *rev'd on other grounds by Smialek v. Begay*, 1986-NMSC-049.  Section 41-4-4

plainly states that "[a] governmental entity and any public employee while acting within the

scope of duty are granted immunity from liability for any tort except as waived. . . . by Section

41-4-5 through 41-4-12 . . . ."  As detention center officers are considered "law enforcement

officers" for purposes of the NMTCA, *see Davis v. Bd. of County Com'rs of Dona Ana County,*

1999-NMCA-110, ¶ 35, 127 N.M. 785, 796, 987 P.2d 1172, 1183, immunity has been waived for

only a limited list of intentional torts, but has not been waived for acts of negligence of negligent

supervision.  The law is clear that immunity is not waived under Section 41-4-12 for "negligence

standing alone." *Caillouette v. Hercules, Inc.,* 1991-NMCA-008, § 18, 113 N.M. 492, 497, 827

P.2d 1306, 1311 (relying on *Bober v. New Mexico State Fair,* 1991-NMSC-031, 111 N.M. 644,

808 P.2d 614).  Since Plaintiff's state claims sound in negligence, he cannot avail himself of the

waiver of immunity provided by Section 41–4–12.  *See, e.g., Oliveros v. Mitchell*, 449 F.3d

1091, 1096 (10th Cir. 2006) (construing the NMTCA and finding that immunity was not waived

for negligent shooting by police officer during the plaintiff's arrest). Furthermore, because the alleged negligence must affect the general public rather than an isolated individual, New Mexico holds that a prison official's immunity is not waived when he negligently releases an inmate into general population when known enemies of the prisoner attacked and injured the inmate. *Archibeque v. Moya*, 1993-NMSC-079, ⁋⁋ 9-11, 116 N.M. 616, 620, 866 P.2d 344, 348; *see also Espinoza v. Town of Taos,* 1995-NMSC-070, ⁋ 9, 120 N.M. 680, 683, 905 P.2d 718, 721 (stating that the critical question in the § 41-4-6 analysis is whether the condition complained of creates a potential risk to the general public); *Baca v. State,* 1996-NMCA-021, ⁋ 19, 121 N.M. 395, 396, 911 P.2d 1199, 1200 (interpreting *Espinoza* as requiring "(1) a condition that (2) creates a danger to the general public" before immunity will be waived under Section 41-4-6). Because none of Defendants' allegedly negligent conduct placed the general public at risk, the NMTCA does not contemplate or otherwise authorize waiver of immunity.

The law is clear that none of Plaintiff's state law claims are authorized by the NMTCA and that Plaintiff has not set forth specific facts based on admissible evidence from which a rational fact finder could find in his favor. The undersigned recommends that the District Judge grant summary judgment to Defendants on these state law claims.

### 4. Other Claims or Arguments Raised by Plaintiff

Plaintiff makes passing reference in his Affidavit to an alleged denial of access to religious materials. Doc. 12 at 12. Beyond making this single passing reference, Plaintiff fails to develop any argument in support of a potential claim that his civil rights were violated by being denied religious materials. Accordingly, the undersigned recommends that the District Judge DENY this claim, to the extent that Plaintiff has raised it.

Plaintiff asks the Court to dismiss the *Martinez* Report because it contains reference to his criminal records. Doc. 33 at 1-2. Plaintiff claims that these documents are not relevant because his complaint concerns civil rights violations. *Id.* at ⁋ 2. Plaintiff also states that Defendants "defame" the Plaintiff through the use of these records, and later alleges the "crime of libel." *Id.* at ⁋⁋ 4, 10. Plaintiff has utterly failed to develop these arguments, and the Court sees no merit to them, as the documents produced by the Defendants, which are part of Plaintiff's booking jacket (i.e. state court records that resulted in his placement in Defendants' custody), are relevant for the Court's consideration. The Court recommends that the District Judge DENY Plaintiff's motion to dismiss the *Martinez* Report.

Plaintiff has also moved for summary judgment, Doc. 30, to which Defendants have responded. Doc. 31. Based on the Court's ruling above, the Court recommends that the District Judge DENY this motion as moot.

<u>CONCLUSION AND RECOMMENDATIONS</u>

Thus, summary judgment should be granted on the ground that there are no genuine issues of material fact on the issues of (1) whether Defendants violated Plaintiff's civil or constitutional rights by imposing cruel and unusual punishment, and (2) whether Defendants acted with negligence, negligent supervision, or deliberate indifference to a substantial risk of serious harm. Even construing the facts in favor of Plaintiff, he cannot prove the elements that are essential to his claims, and therefore Defendants are entitled to summary judgment. For all of the foregoing reasons, the Court recommends that Defendants' *Martinez* Report be treated as a motion for summary judgment, and:

      1.      That the Court FIND:

a. that Plaintiff was not deprived access to religious materials, to the extent he has raised that claim; and

b. that Defendants have not committed the offenses of defamation or libel;

2. That the Court DENY Plaintiff's request that it dismiss the *Martinez* Report;

3. That the Court DISMISS WITH PREJUDICE Plaintiff's *Amended Verified Civil Rights Complaint;*

4. That the Court DENY Plaintiff's motion for summary judgment as moot.

_____
JOHN F. ROBBENHAAR
U.S. Magistrate Judge

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**